**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

G.M.,

Plaintiff,

v.

COUNTY OF BELTRAMI and RAYMOND AURELIO COTA,

Defendants.

Civil No. 00-1767 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

---

Susan A. McKay, McKAY LAW OFFICE, 11359 Windrow Drive, Eden Prairie, MN 55344, for plaintiff.

Jon K. Iverson, IVERSON REUVERS, LLC, 230 Townline Plaza, 8585 West 78th Street, Bloomington, MN 55438, for defendant Raymond A. Cota.

Melinda M. Sanders and Dyan J. Ebert, QUINLIVAN & HUGHES, P.A., P.O. Box 1008, St. Cloud, MN 56302, for defendant County of Beltrami.

Plaintiff G.M. has filed suit under 42 U.S.C. § 1983 against Raymond Cota ("Cota"), her former supervisor in the Beltrami County Sentence-to-Service ("STS") program, and against Beltrami County (the "County"), Cota's employer. Plaintiff alleges violations of her equal protection and substantive due process rights under the Fourteenth Amendment. This matter is now before the Court on motions for summary judgment by

FILED SEP 23 20[illegible]
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ________
DEPUTY CLERK ________

Cota and the County. For the reasons discussed below, the Court now denies Cota's motion and grants the County's motion.

## BACKGROUND

In 1994, plaintiff was convicted for driving while intoxicated in Hubbard County, Minnesota. Because this was her third DWI, plaintiff was placed on unsupervised probation, fined, and given a no-drink order. Plaintiff was allowed to perform community service in Beltrami County, where she lived, to pay off her fine. To perform this service, she enrolled in the Beltrami County Sentence-To-Service Program ("STS"). Participants in the STS program work for the County, and their salaries go toward paying off their fine. Participants also sign a contract in which they promise not to use alcohol or drugs while in the program.

Defendant Cota has been a crew leader in the STS program since 1991. Beltrami County is aware of two complaints against Cota that took place prior to the incidents at issue here. The first complaint, by a fellow staff member, was unrelated to sexual activity. It involved a female crew leader who felt Cota and other male crew leaders bossed her around. The second complaint was brought by members of Cota's crew, who complained to the sheriff that Cota gave a particular female crew member preferential treatment. Rumors also circulated that Cota was romantically involved with the crew member. The sheriff apparently investigated this complaint, but the allegations were never substantiated and no further action was taken.

Cota was plaintiff's supervisor in the STS program, but plaintiff and Cota eventually developed a more personal relationship. They spoke to each other about their lives, and plaintiff claims she told Cota about her struggle to remain sober, and how her drinking interfered with her ability to regain custody of her children. Plaintiff claims that Cota occasionally patted her buttocks at work. Cota gave plaintiff rides home after work and would call her late at night from bars when he was intoxicated. Plaintiff also went out to bars with Cota and his friends. Plaintiff alleges that on some of these occasions, Cota encouraged her to drink. Plaintiff declined, explaining that drinking caused her to suffer from blackouts and seizures. Plaintiff also alleges that on these occasions, Cota would make remarks that reminded her of his supervisory status, such as reminding her that she needed to finish up her STS hours. Cota claims he did not know that plaintiff was under a no-drink order.

Plaintiff and Cota had sexual intercourse on two occasions. The first took place in December 1994 or January 1995. On that occasion, Cota called plaintiff in the middle of the night to see if she wanted to join him and a friend for breakfast at a restaurant. Plaintiff declined, but invited Cota and his friend, Bill Atwater, an on-duty Beltrami County Sheriff's deputy, to her home. The three drank coffee at plaintiff's home, after which Atwater left and Cota remained. He and plaintiff then engaged in consensual sex.

The second occasion was April 2, 1995, when plaintiff accepted Cota's invitation to a party at his home. During the party, plaintiff had several drinks, and apparently became intoxicated. Later that evening, plaintiff and Cota had sex. Cota claims that this encounter was consensual. Plaintiff denies that it was consensual, and says that she does

not remember having sex. When plaintiff awoke the next morning in Cota's bed, she was wearing only a t-shirt, and she noticed a video camera and tripod in the room. She states that the camera and tripod were not present the previous evening, and now claims to have "flashbacks" in which she sees a blinking red light on the camera. Plaintiff said nothing about the camera to Cota that morning, but several days later plaintiff spoke with Cota and tried to get him to admit that he had videotaped her. Cota denied making any such tape.

Sometime in April 1995, plaintiff reported this incident to the Minnesota Bureau of Criminal Apprehension ("BCA"). BCA investigators never found a videotape, and Cota again denied taping plaintiff. The Beltrami County Attorney reviewed the BCA's investigation, and in April 1996 referred the matter to the Clearwater County Attorney to handle the matter as a special prosecutor. On April 23, 1997, the Clearwater County Attorney notified the BCA that it was declining to prosecute Cota.

Beltrami County runs its STS program through a contract with the Minnesota Department of Corrections (the "Department"). The County is free to craft rules for its STS program, and is not bound by state-issued rules used in other Department-run STS programs. At the time Cota and plaintiff were involved, the state-issued regulations forbade any "ongoing personal association" between STS staff and participants. Beltrami County decided not to adopt this policy because it is a small rural county in which many participants and staff already had ongoing familial or personal relationships. Cota states that he was aware of no policy forbidding personal relationships between STS staff and participants. He conceded, however, that such relationships probably aren't a "good

practice." Nevertheless, Cota asserts that when he and plaintiff had sex, he believed she had completed the program.

Sometime in 1998, the Department contacted the Beltrami County Sheriff to see if the County had disciplined Cota. On September 2, 1998, Sheriff DeeWayne Rognstad assured the Department that the matter had been addressed. On the same day, Sheriff Rognstad sent a "letter of instruction" to Cota, informing him that his behavior with plaintiff was "unacceptable," and outlining standards of behavior that Cota must follow. This letter did not impose any disciplinary sanctions on Cota. In 1999 and 2000, the new sheriff, Keith Winger, corresponded with the Department over the incident between Cota and plaintiff. When the Department threatened to withhold funding, the County and Department worked to establish new policies to prevent personal relationships between STS participants and staff. On December 28, 1999, Beltrami County enacted a new policy that prohibited relationships between STS participants and staff.

## ANALYSIS

Plaintiff claims that Cota singled her out for different treatment because of her gender, and that he engaged in sexual intercourse with her, violating her substantive due process right to bodily integrity. Plaintiff alleges that Cota's actions were taken under color of state law, in his role as her supervisor in the STS program. Plaintiff also alleges that Beltrami County knew Cota posed a risk of harassing plaintiff but failed to act, and that the County was deliberately indifferent toward her rights.

## I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981).

## II. Cota's Motion for Summary Judgment

Cota argues that he was not acting under color of state law in his relations with plaintiff. Specifically, Cota argues that his sexual encounters with plaintiff were consensual, took place during off-duty hours, and did not violate any County policy. Plaintiff claims that she and plaintiff never had a true "relationship" outside the STS program. Plaintiff contends that all of her interactions with Cota were influenced by the fact that Cota was her supervisor, someone who had power over whether she completed her sentence. Plaintiff also argues that Cota's power to cite her (or, in STS parlance, "violate" her) for breaking her STS contract by drinking alcohol is further evidence that he was clothed with state authority during their encounters.

To state a claim under § 1983, plaintiff must allege the deprivation of a constitutionally protected right by a person acting under color of state law. *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997). Sexual assault can be a deprivation of the substantive due process right to bodily integrity. *Rogers v. City of Little Rock, Arkansas*, 152 F.3d 790, 796 (8th Cir. 1998); *Haberthur v. City of Raymore, Missouri*, 119 F.3d 720, 723 (8th Cir. 1997). Such violations need not occur through physical force, but can be based on mental coercion. *Rogers*, 152 F.3d at 797. Plaintiff's allegations, if true, would certainly "shock the conscience," and therefore would be actionable as a substantive due process violation. *Id.*

The question of whether Cota acted under color of state law "turns on the nature and circumstances of [his] conduct and the relationship of that conduct to the performance of his official duties." *Roe*, 128 F.3d at 1216. In this case, plaintiff must

demonstrate a "real nexus" between the alleged sexual assault and Cota's duties as an STS supervisor. *Id.* at 1217-18.

Cota relies upon *Roe*, in which the plaintiff, an 11 year-old girl, accused the defendant, a police officer who worked at her school, of molesting her when he was off duty. *Id.* at 1214-15. The court held that defendant's mere status as a police officer did not convert his off-duty abuses into matters actionable under § 1983. *Id.* at 1216. Cota points out that here, the sexual encounter did not occur on the job, he was not carrying out a specific state duty (i.e., making an arrest), and he did not possess indicia of state authority typically associated with officers acting under color of state law (i.e., badges, guns, uniforms, etc.). *See, e.g., id.* at 1215; *Rogers*, 152 F.3d at 798.

*Roe* can be distinguished on its facts. There, even though the defendant was a police officer, plaintiff was never subject to his authority. Plaintiff and defendant were acquaintances, and the conduct occurred at the defendant's home during off-duty hours. The court in that case held that "there was no nexus between [the defendant's] position as a police officer and his abuse of [plaintiff]." *Id.* at 1218. Here, as in other cases in which a nexus was found, plaintiff was subject to Cota's authority.

In *Dang Vang v. Vang Xiong S. Toyed*, 944 F.2d 476 (9th Cir. 1991), defendant Xiong was employed by the state to find jobs for refugees and to teach them to drive. The two victims, both Hmong refugee women, met Xiong when they sought state assistance through him. Xiong arranged supposedly legitimate meetings with the women, but then raped them. *See id.* at 478. The Ninth Circuit concluded that sufficient evidence existed to establish that Xiong was acting under color of state law. Each plaintiff came

into contact with Xiong out of her need for employment, and each was raped during a meeting that was related to Xiong's official position. *Id.* The court held that the plaintiffs were "in awe of government officials," because they were refugees dependent on the state for assistance and benefits. Thus, the jury could have concluded that Xiong used his government position to exert influence and control in order to rape the plaintiffs. *Id.* *See Roe*, 128 F.3d at 1216-17.

In *Doe v. Taylor*, 15 F.3d 443 (5th Cir. 1994), the Fifth Circuit held that a high school teacher who engaged an ongoing sexual relationship with one of his students was acting under color of law, stating that the teacher "took full advantage of his position as [the student's] teacher and coach to seduce her." *Id.* at 452 n.4. The court noted that the teacher required the student to do little or no class work but gave her "A" grades; spoke to another teacher about raising the student's grade in another class; took the student from his classroom to an adjacent room to engage in sexual contact with her; and used his position as her basketball coach to create other opportunities for sexual contact. *Id.* The court held that a "real nexus" between the sexual activity and the defendant's duties and obligations as a teacher was clearly present, and the teacher was therefore acting under color of state law. *Id.* *See Roe*, 128 F.3d at 1217.

In this case, plaintiff was serving a state-imposed criminal sentence, and Cota was her supervisor. He had power over when and how she could successfully complete the STS program. Plaintiff has presented evidence that she saw Cota socially only because she felt pressured by the authority he had over her. Plaintiff also alleges that Cota frequently reminded her of this authority by urging her to finish her STS time, by

pressuring her to drink, and by showing up at her home accompanied by an on-duty, uniformed deputy sheriff. Plaintiff was extremely vulnerable. The Court finds that here, as in *Dang Vang* and *Doe*, plaintiff has alleged sufficient facts for the jury to infer a nexus between Cota's abuse of his authority and the alleged assault. *See Roe*, 128 F.3d at 1216. Because plaintiff's allegations raise a genuine issue of material fact as to whether Cota acted under color of state law, Cota's motion for summary judgment must be denied.

## III. Beltrami County's Motion for Summary Judgment

Beltrami County argues that even if plaintiff has demonstrated a case against Cota, plaintiff has not alleged sufficient facts to find municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiff argues that the County is liable for Cota's actions on two grounds: (1) its failure to respond to complaints about Cota; and (2) its failure to train employees or enact a policy regarding personal relationships or sexual harassment of STS participants. Plaintiff argues that these failures constitute deliberate indifference to her constitutional rights, and are sufficient to establish liability under *Monell*.

To find the County liable for Cota's actions, plaintiff must show that the County had a "policy or custom" that was the "moving force" behind Cota's constitutional violations. *Harris v. City of Pagedale*, 821 F.2d 499, 507 (8th Cir. 1987); *Monell*, 436 U.S. at 694. The County may be found liable for a "governmental custom of failing to receive, investigate and act upon complaints of sexual misconduct of its employees" if

plaintiff proves the existence of an official custom of such conduct, and if that custom caused her constitutional harm. *P.H. v. School Dist. of Kansas City, Missouri*, 265 F.3d 653, 658 (8th Cir. 2001) (quoting *Larson v. Miller*, 76 F.3d 1446, 1453 (8th Cir. 1996) (en banc)); *Rogers*, 152 F.3d at 798; *Jane Doe "A" v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645-46 (8th Cir. 1990). To establish such a custom, plaintiff must prove:

> (1) a continuing, widespread, persistent pattern of misconduct by [Cota];
>
> (2) deliberate indifference to or tacit authorization of the conduct by the [County's] policy-making officials after the officials have notice of the conduct; and
>
> (3) a resulting injury on the part of the plaintiff.

*P.H.*, 265 F.3d at 658-59; *Jane Doe "A"*, 901 F.2d at 646.

In the present case, plaintiff has failed to allege a "continuing, widespread, persistent pattern of misconduct" by Cota. Prior to the incidents at issue here, there were only two incidents involving Cota of which the County received notice. One did not involve sexual conduct. The second incident involved allegations of Cota giving "preferential treatment" to a female STS participant, and rumors that he was romantically involved with the participant. These allegations were investigated but were never substantiated. Mere rumors or unsubstantiated allegations are not sufficient to establish the "continuing, widespread, persistent pattern" required for § 1983 liability. *See id.* at 659-60; *Larson*, 76 F.3d at 1453 (noting that the Eighth Circuit has held records with far more than one complaint insufficient to establish a "pattern" of unconstitutional behavior). Therefore, even if plaintiff's allegations here are true, she has not demonstrated any "pattern" of violations by Cota.

To establish § 1983 liability for the County's failure to train STS employees on personal relationships and sexual harassment, plaintiff must show that this failure demonstrated deliberate indifference to the rights of STS participants. *P.H.*, 265 F.3d at 660. *See also Shrum v. Kluck*, 249 F.3d 773, 779 (8th Cir. 2001) (holding plaintiff must show that a policy or custom which deprived plaintiff of his constitutional rights was enacted "with deliberate indifference as to its known or obvious consequences"). Plaintiff must also show that the County "had notice that its procedures were inadequate and likely to cause a constitutional violation." *P.H.*, 265 F.3d at 660. Notice may be implied when "the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious or where a pattern of misconduct indicates that [the County's] responses to a regularly recurring situation are insufficient" to protect the rights of STS participants. *Id.* *See also City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989) (holding evidence that a "particular officer may be unsatisfactorily trained" or that an "otherwise sound program has occasionally been negligently administered" is insufficient to fasten liability on the city).

In the present case, plaintiff has noted that Beltrami County deliberately chose not to adopt the state-recommended policy barring personal relationships between STS staff and participants. Plaintiff has not, however, offered proof that this choice was made with deliberate indifference to her rights or to those of others like her. The County was not required to adopt the state's policy, and the County explained its reasons for rejecting it. Even if this choice was unwise – and it appears to have been – plaintiff has not demonstrated that Cota's alleged behavior was a "known or obvious consequence[]" of

the County's choice. *See Shrum*, 249 F.2d at 779 (quoting *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 407 (1997)). While it is conceivable that failure to adopt such a policy would result in the sexual abuse of an STS participant, it is far from clear that such an outcome is "obvious."

Plaintiff has also failed to show that the County's choice not to adopt a relationship policy or conduct staff-participant sexual harassment training was the "moving force" behind Cota's alleged constitutional violation.[1] *See Shrum*, 249 F.3d at 779. While Cota has testified that he knew of no policy preventing him from having a relationship with plaintiff, he also stated that he knew it was not a "good practice." This evidence does not prove that Cota acted as he did **because** of the County's failure to enact a policy. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. Plaintiff has not provided sufficient evidence to meet this strict standard. The Court finds that no reasonable jury could return a verdict for plaintiff on her claims against Beltrami County. Accordingly, the Court will grant the County's motion for summary judgment.

[1] It should be noted that Beltrami County did have sexual harassment training programs in place at the time, but these programs were geared toward employee-employee harassment. Nevertheless, plaintiff has produced no evidence that the County had notice that its policies were inadequate. *See P.H. v. School Dist. of Kansas City, Missouri*, 265 F.3d 653, 661 (8th Cir. 2001).

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Raymond Aurelio Cota's Motion for Summary Judgment [Docket No. 52] is **DENIED**.

2. Defendant Beltrami County's Motion for Summary Judgment [Docket No. 44] is **GRANTED**.

DATED: September 23, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge